## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

---

**TRINIKA MCFARLAND**,

    *Plaintiff*,

    v.                                 Case No. 2:23-cv-02739-BCL-atc

**FEDERAL EXPRESS CORPORATE
SERVICES**,

    *Defendant*.

---

### ORDER GRANTING DEFENDANT'S MOTION
### FOR SUMMARY JUDGMENT (DOC. 42)

---

Before the Court is Defendant Federal Express Corporation's ("FedEx") Motion for Summary Judgment. Doc. 35. In its Motion (Doc. 35), Defendant seeks judgment on the grounds that (1) Plaintiff's claims are time barred and (2) Plaintiff failed to make a prima facie showing of discrimination and retaliation. Doc. 35. Plaintiff, who is represented by counsel, did not file a response in opposition to the Motion. For the reasons that follow, the Court **GRANTS** FedEx's Motion for Summary Judgment (Doc. 35).

### BACKGROUND

**A.**    Plaintiff Trinika McFarland was a longtime worker at FedEx, having started working for Defendant in 1999. Doc. 1-2 at 4. Plaintiff worked as a Ramp Agent and is an African-American woman and is a homosexual. *Id.* On January 12, 2022, Plaintiff and a coworker, Andrew Christopher, got into an altercation, which Plaintiff claims was verbal. Doc. 1-2 at 5; Doc. 35-2 at 2. Following this interaction, Mr. Christopher accused Plaintiff of pushing him. *Id*. at 3. Mr. Christopher filed a workplace violence complaint against Plaintiff following the altercation. *Id*.

Despite knowing of Mr. Christopher's complaint, Plaintiff did not file a complaint against Mr. Christopher or make any report following the altercation. *Id.*

Following this, Defendant conducted an investigation into the altercation, placing Plaintiff on paid suspension for three weeks. *Id.* The investigation compiled a written statement from both Plaintiff and Mr. Christopher and received statements from two witnesses of the event. *Id.* at 4. Both witnesses corroborated Mr. Christopher's allegation that Plaintiff shoved him. *Id.* On February 2, 2022, Plaintiff received a letter demoting her from Ramp Agent to Material Handler given a violation of Defendant's Acceptable Conduct Policy. *Id.* at 5.

Plaintiff pursued a review through Defendant's three-tiered review process for disciplinary actions, challenging the letter and demotion through all three steps. *Id.* At each level, the appropriate decision makers were given the results of the investigation. *Id.* At Step 1, Plaintiff's appeal was denied and the decision to demote her was upheld. *Id.* at 5-6. At Step 2, Plaintiff first alluded to race, stating that she believed that she was treated unfairly because Mr. Chrisopher is a "white male" and that as a result "it was automatically assumed that his words are true." *Id.* at 6. Plaintiff's statement did not mention discrimination based on her sexual orientation. *Id.* At Step 2, the demotion and warning letter were again upheld. *Id.* Given Plaintiff's mention of race at Step 2, an internal investigation was conducted on Plaintiff's behalf. *Id.* at 7. Plaintiff then continued to Step 3, where the appeals board modified her disciplinary action and altered her demotion to termination based on the fact that two witnesses corroborated Mr. Christopher's claim that Plaintiff shoved him and that such actions "normally result in termination." *Id.*

Plaintiff was formally terminated on April 18, 2022, for violation of Defendant's Acceptable Conduct Policy. *Id.* at 2. Plaintiff then filed her original discrimination charge with the Equal Employment Opportunity Commission and the Tennessee Human Rights Commission in

July 2022. *Id.* Plaintiff's initial charge of discrimination was premised only on race, but she later amended it to include an allegation of discrimination based on sex. *Id.*

    **B.**    Plaintiff later filed suit in the Circuit Court of Shelby County, Tennessee on October 11, 2023. Doc. 1-2 at 2. Defendant removed this case on November 20, 2023. Doc. 1.

In her complaint, Plaintiff claims "a continuing series of discriminatory conduct against her because of her race, sexual orientation, and acts by the Defendant in retaliation of Plaintiff complaining of said discrimination." Doc. 1-2 at 3. Specifically, Plaintiff alleges six counts: (1) violation of the Tennessee Human Rights Act, TCA § 4-21-401; (2) violation of the Tennessee Public Protection Act, TCA § 50-1-304; (3) violation of Tennessee Common Law Retaliatory Discharge; (4) violation of Due Process and Equal Protection under the Tennessee Constitution; (5) violation of 42 U.S.C. § 2000e-2(a)(1) (Title VII); and (6) violation of 42 U.S.C. § 1981, *Id.* at 6-10.

Chief Judge Sheryl Lipman was initially assigned to the case, before entering a notice of recusal. Docs. 3, 7. The case was then transferred to Judge Mark Norris, who likewise recused Docs. 8, 10. The case then transferred to Judge Samuel Mays. Doc. 12. Defendant filed this Motion for Summary Judgment on January 20, 2026. Doc. 35. Plaintiff did not respond to the motion. On April 15, 2026, this case was transferred to the undersigned. Doc. 36.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56 a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "There is no genuine issue for trial when the record as a whole"— including "the pleadings, the discovery and the disclosure materials on file, and any affidavits"— "could not lead a rational trier of fact to find for the non-moving party." *Burgess v. Fischer*, 735

F.3d 462, 471 (6th Cir. 2013) (quotation marks and citation omitted). In resolving a motion for summary judgment, a court must consider the evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.*

## ANALYSIS

### I.    With the exception of the Title VII claim, Plaintiff's claims are time-barred.

Defendant argues that, except for Plaintiff's claim under Title VII, all of Plaintiff's claims are time-barred under the six-month limitation period contained in her employment contract with Defendant. Doc. 35-1 at 2; Doc. 35-3 at 59 ("To the extent the law allows an employee to bring legal action against Federal Express Corporation, I agree to bring that complaint within the time prescribed by law or 6 months from the date of the event forming the basis of my lawsuit, whichever expires first.").  Plaintiff did in fact file her lawsuit more than six months after she was terminated: Plaintiff was terminated on April 18, 2022, and she filed her complaint on October 11, 2023. Doc. 1-2 at 2.

The six-month time limit to which Plaintiff agreed in her contract is legally effective. The Supreme out of the United States has explained that, in "the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action … to less than that prescribed in the general statute of limitation, provided the shorter period itself shall be a reasonable period." *Ord. United Com. Travelers Am. v. Wolfe*, 331 U.S. 586, 608 (1947). And a six-month limitations period has been held reasonable and, thus, capable of limiting the time in which a plaintiff may bring an action that otherwise would not be time-barred. *See Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352, 355-56, 358 (6th Cir. 2004) (affirming dismissal based on contract provision imposing six month limitation); *Tompkins v. Fed. Express Corp.*, No. 2:09CV02073-JPM-DKV, 2010 WL 1780232, at *2 (W.D. Tenn. Apr. 30, 2010) ("[S]ix months

was enough time for Plaintiff to learn of his discharge, investigate the circumstances of that event, and file a complaint.").

But there are two complicating factors here. First, Plaintiff has asserted a variety of claims under Tennessee law—and whether parties may contractually shorten a statute of limitations would appear to be a question properly answered by the State creating the underlying rights and governing those contracts.[1] Here, that is Tennessee. But Tennessee courts have borrowed the federal law in cases involving Tennessee claims, albeit in unpublished cases. *See Skaan v. Federal Express Corp.*, 2012 WL 6212891, at *9 (Tenn. App. 2012) (common law claims); *Evans v. FedEx Exp.*, 2014 WL 309351 (Tenn. App. 2014) (Tennessee Human Rights Act). Those Tennessee cases and Tennessee's public policy supporting upholding contracts lead to the conclusion that the best *Erie* guess is that the Tennessee Supreme Court would hold that parties may shorten the statute of limitations by contract.

But, there is a second wrinkle: Several of Plaintiff's claims are statutory. The Sixth Circuit has held that when a rights-creating statute comes with its own, specific limitations period, parties may not shorten it by contract. The Sixth Circuit so held in a case involving Title VII claims, *see Logan v. MGM Grand Detroit Casino*, 939 F.3d 824 (6th Cir. 2019), but if you accept the rule there is no good reason for limiting the rule itself to Title VII. That does not matter for Plaintiff's claim under Section 1981, because the Sixth Circuit has held that parties can by contract shorten the time period for bringing such claims. *See Thurman*, 397 F.3d 352. And it does not matter for the claim asserting a violation of due process and equal protection under the Tennessee constitution, because

---

[1] In older, more formalistic days, statutes of limitations were deemed procedural and thus governed by the law of the forum, at least in the conceptually related choice of law context. But for better or worse, such questions are answered less formalistically now and, in any event, the question posed here concerns not only the statute of limitations but also the substantive law of contract (and its limits). But if all that is wrong, it means only that the paragraph in the text is simply unnecessary because the whole issue can be answered by the federal law discussed in the paragraphs that sandwich this one.

those rights do not come packaged with guaranteed limitations periods, or even any limitations periods at all. And, somewhat surprisingly, the result is similar under the Tennessee Human Rights Act, where the only on-point Tennessee authority has allowed contractual shortening of the limitations period and Plaintiff—having declined to respond to the Motion—has offered no reason to doubt that the Tennessee Supreme Court would come out the same way. *See Evans v. FedEx Exp.*, 2014 WL 309351 (Tenn. App. 2014) (Tennessee Human Rights Act); *accord Tomkins v. Federal Express Corp.*, 2010 WL 1780232 (W.D. Tenn. 2010) (so concluding, but without recognizing that state law does or even might govern).   Finally, given that conclusion, the same rule applies to the Tennessee Public Protection Act, which likewise does not have "an internal statute of limitations." *Boone v. Town of Collierville*, 593 S.W. 3d 156, 163 (Tenn. App. 2019) (treating the TPPA and THRA similarly for limitations purposes).

The upshot is that, after application of the contractual limitations period, Plaintiff's claim under Title VII is all that remains.

## II.    Plaintiff's discrimination claim fails as a matter of law.

A.    Although Plaintiff's complaint is far from clear, she at one point in the background section alleges that she was discriminated against on the basis of her sexual orientation. Doc. 1 at 3. There appears to be nothing in the record supporting any such claim; indeed, Plaintiff testified during her deposition that she did not know how her sexual orientation related to her claims. Doc. 53-3 at 47.  And, as Defendant notes and Plaintiff admits (Doc. 53-3 at 12), Plaintiff did not present any claim based on sexual orientation to the EEOC, and so has failed to exhaust any claim based directly on sexual orientation. *See Russ v. Memphis Light Gas & Water Div.*, 720 Fed.Appx. 229, 236 (6th Cir. 2017). Thus, any claim of discrimination premised distinctly on sexual orientation necessarily fails.

6

**B.**      In any event, Plaintiff's claim of discrimination—clearly on race, perhaps based on sex (and through that reference, perhaps sexual orientation under the rule imposed in *Bostock*) even though Plaintiff does not mention it in her Title VII claim—fails as a matter of law.[2] Where, as here, there is no direct evidence of discrimination, a discrimination claim in violation of Title VII is governed by the *McDonnell Douglas* framework, under which "the plaintiff must [first] make a prima facie showing that the defendant acted with a discriminatory motive." *Ames v. Ohio Dep't of Youth Services*, 605 U.S. 303, 306 (2025); *see generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973).  To do so, the plaintiff must show that she: (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) that similarly-situated persons not in the protected class were treated differently. *Thurman v. Yellow Freight Sys. Inc*., 90 F.3d 1160, 1166 (6th Cir.1996).  "If the plaintiff clears that hurdle, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Ames*, 605 U.S. at 308-09. "Finally, if the employer articulates such a justification, the plaintiff must then have a fair opportunity to show that the stated justification was in fact pretext for discrimination." *Id.* at 309. "A plaintiff may succeed under the *McDonnell Douglas* framework either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.*  FedEx does not dispute that Plaintiff is a member of a protected class, that she was qualified for the job, or that the termination of Plaintiff amounted to an adverse employment action.

---

[2] Plaintiff does mention discrimination on the basis of disability, but that reference appears to have no relevance whatsoever to this case. Doc. 1-2 at 9.

Even still, Plaintiff has not shown that similarly situated persons not in her protected class (or here, classes) were treated differently. "To establish that a non-protected employee is an appropriate comparator, 'the plaintiff [must] demonstrate that he . . . is similarly-situated to the non-protected employee in all relevant respects." *Dickens v. Interstate Brands Corp.*, 384 Fed.Appx. 465, 468 (6th Cir. 2010) (emphasis omitted).

In her complaint, Plaintiff suggests Mr. Christopher as a comparator, but for Title VII purposes he does not qualify as a comparator as a matter of law. Doc. 1-2 at 5-6. "In the disciplinary context, [the Sixth Circuit] has held that requires that the plaintiff and the proposed comparator has engaged in acts of 'comparable seriousness.'" *Dickens v. Interstate Brands Corp.*, 384 F. App'x 465, 468 (6th Cir. 2010). And here, Plaintiff was not similarly situated: Two witnesses told Defendant that Plaintiff shoved Mr. Christopher, resulting in a workplace violence complaint; no one claims that Mr. Christopher shoved Plaintiff. Plaintiff's claim thus fails under the *McDonnell Douglas* framework. Moreover, because Plaintiff chose not to respond to the summary judgment motion, her discrimination claim fails for the additional reason that she has not identified evidence that would allow a reasonable jury to find that Defendant's proffered explanation for her termination—that she shoved a coworker—was pretext. *See Ames,* 605 U.S. at 308-09.

### III.     Plaintiff's Title VII claim of retaliation also fails as a matter of law.

Plaintiff claims that she was retaliated against for "engaging in [the] protected activity of complaining about her workplace assault." Doc. 1-2 at 9. To make out a *prima facie* claim of retaliation under Title VII, Plaintiff must show that 1) she engaged in a protected activity, 2) Defendant was aware of the exercise of such protected activity, 3) Defendant took an action that was materially adverse to her, and 4) a causal connection existed between the protected activity and the materially adverse action. *Wingo v. Mich. Bell Tel. Co.*, 815 F. App'x 43, 46 (6th Cir.

2020). "If a plaintiff establish a *prima facie* case, then the burden of production shifts to the defendant to provide a legitimate, nonretaliatory reasons for its actions." *Id.* "If the defendant does so, the burden shifts back to the plaintiff to show that the proffered reasons … were a pretext for retaliation." *Id.*

Plaintiff claims that she partook in protected activity, namely the "activity of complaining about her workplace assault." Doc. 1-2 at 9. Her claim fails because there is no evidence that a causal connection existed between the protected activity and the materially adverse action, thus failing to plead a *prima facie* case of retaliation pursuant to Title VII. In her deposition, Plaintiff testified that she "felt like the more steps I was taking and especially once [] EEOC got involved, then they terminated me," and that other employees told her not "to take it to Step 3" of Defendant's internal process "because most likely you will end up being terminated." Doc. 35-3 at 45. But "temporal proximity alone is generally not enough to establish the prima facie element of causation." *Wingo*, 815 Fed. Appx. at 46 ; *see also Alexander v. Univ. of Memphis*, 2021 WL 2579973 (6th Cir. June 7, 2021) ( "[T]emporal proximity alone cannot prove pretext."). And beyond that, Plaintiff's statement expresses only a feeling and a warning from unknown sources that is not itself suggestive of pretext—not evidence from which a reasonable jury could conclude that Defendant terminated Plaintiff due to protected activity, as opposed to the fact that two witnesses stated that she shoved her coworker. Thus, Plaintiff's retaliation claim also fails as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment. Doc. 35. The clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED**, this 12th day of June, 2026.

s/ *Brian C. Lea*

BRIAN C. LEA
UNITED STATES DISTRICT JUDGE